Spears v Boro Park Senior Living Community, LLC (2026 NY Slip Op 50002(U))

[*1]

Spears v Boro Park Senior Living Community, LLC

2026 NY Slip Op 50002(U)

Decided on January 5, 2026

Supreme Court, Kings County

Mallafre Melendez, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 5, 2026
Supreme Court, Kings County

Nicole A. Spears, as the Executor of the Estate of James Robinson, Plaintiff,

againstBoro Park Senior Living Community, LLC and Basit Qayyum, M.D., Defendants.

Index No. 505438/2021

Plaintiff
Anthony Matthew Chionchio, Esq. (achionchio@dallimarino.com)
Dalli & Marino, LLP
231 Mineola Boulevard
Mineola, NY 11501
516-292-4700
Defendant Boro Park Senior Living Community, LLC
Richard Mark Fedrow, Esq. (rfedrow@glrrlaw.com)
Gallardo Levin Reiter & Rogers LLP
100 Jericho Quadrangle, Suite 326
Jericho, NY 11753
516-931-1800
Defendant Basit Qayyum, M.D.
Amy Elizabeth Heubel, Esq. (amy.korn@mcblaw.com)
Martin Clearwater & Bell LLP
220 E 42nd St
New York, NY 10017
914-467-7782

Consuelo Mallafre Melendez, J.

Recitation, as required by CPLR §2219 [a], of the papers considered in the review:
NYSCEF #s: Seq. 1: 50 — 51, 52 — 68, 70 — 76, 102
[*2]Seq. 2: 77 — 78, 79 — 93, 94 — 96, 97 — 101, 103
Defendant Boro Park Senior Living Community, LLC ("Boro Park") moves for an Order, pursuant to CPLR 3212, granting summary judgment in their favor and dismissing Plaintiff's Complaint against them (Seq. No. 1).
Defendant Basit Qayyum, M.D. ("Dr. Qayyum") separately moves for an Order, pursuant to CPLR 3212, granting summary judgment in his favor and dismissing Plaintiff's Complaint against him, or granting partial summary judgment on any claims or causes of action on which there are no issues of fact (Seq. No. 2).
Plaintiff opposes both motions as to the medical malpractice claims, only.
Plaintiff commenced this action on March 8, 2021, asserting claims of medical malpractice and negligence per se against the defendants in connection with fall prevention at an assisted living facility. Plaintiff also asserted a cause of action for breach of contract against Boro Park.
Plaintiff does not address the negligence per se or breach of contract cause of action in their opposition, and therefore, the part of Defendants' motions seeking to dismiss those claims is granted without opposition.
Plaintiff alleges that the defendants failed to take proper precautions in monitoring, supervision, and fall prevention, which they allege proximately caused Decedent to sustain a fall on October 4, 2018. Decedent was a resident at an assisted living facility operated by Boro Park, also known as The Belvedere, from February 1, 2018 through October 4, 2018. At the time of his admission, he was 80 years old and had a history of Alzheimer's dementia, seizures, glaucoma, and cataract surgery. His records indicate he had sustained a previous fall at home in 2017, resulting in left subdural hematoma.
On May 1, 2018, Decedent was transferred to the dementia/memory unit at the same Boro Park facility after a discussion with his family. A progress note stated that "resident is know [sic] for falls . . . Family agreed instead of having [to] pay for a private aide they would prefer to pay the difference towards the rent" to transfer him to the memory floor at Boro Park.
Dr. Qayyum was a physician who evaluated Decedent on an "as needed" basis during his time at Boro Park and would relay his "findings and plan of care and suggestions" to the nurses and staff, according to his testimony. Decedent was also seen during his residency by a non-party private neurologist, Dr. Weaver, and non-party internist, Dr. Rassi. Dr. Qayyum evaluated Decedent on five occasions: February 27, 2018, June 12, 2018, July 17, 2018, August 21, 2018, and September 11, 2018.
Decedent sustained a fall on August 15, 2018 and was treated at Methodist Hospital without serious injuries. Dr. Qayyum noted the fall in his August 21 chart and recommended a physical therapy evaluation.
On September 10, Decedent was referred by his neurologist to an emergency room for hypertension, and he was discharged back to Boro Park the following day. Dr. Qayyum treated Decedent again on September 11. On this visit, Dr. Qayyum recommended a low dose of melatonin for insomnia and noted "monitor for night time falls" and "consider more one to one care to monitor patient." On the same date, a progress note from a Boro Park nurse stated "It was discussed with family that Mr. Robinson may need an aide during the night, family disagreed."
On October 4, 2018 at approximately 11:35 p.m., Decedent was discovered on the floor of his room with a laceration on his head, and he was transferred to Methodist Hospital. He was diagnosed with right-sided subdural hematoma and left orbital fracture with globe rupture and [*3]retinal and corneal detachment. He underwent eye surgery and a craniotomy to drain the hematoma, but he remained intubated following the surgery and was unable to be weaned from the ventilator. He later passed away on March 14, 2019.
Plaintiff alleges that Boro Park failed to implement adequate fall prevention measures or transfer Decedent to a skilled nursing home or other facility for a higher level of care. Plaintiff also alleges that Dr. Qayyum departed from the standard of care in recommending and following up on fall interventions. Plaintiff alleges that these departures proximately caused Decedent's October 4 fall and resulting injuries.
In evaluating a summary judgment motion in a medical malpractice action, the Court applies the burden shifting process as summarized by the Second Department: "[A] defendant must make a prima facie showing either that there was no departure from good and accepted medical practice, or that the plaintiff was not injured by any such departure" (Rosenzweig v Hadpawat, 229 AD3d 650, 652 [2d Dept 2024]). "In order to sustain this prima facie burden, the defendant must address and rebut any specific allegations of malpractice set forth in the plaintiff's complaint and bill of particulars" (Martinez v Orange Regional Med. Ctr., 203 AD3d 910, 912 [2d Dept 2022]). "Once a defendant physician has made such a showing, the burden shifts to the plaintiff to demonstrate the existence of a triable issue of fact, but only as to the elements on which the defendant met the prima facie burden. Summary judgment is not appropriate in a medical malpractice action where the parties adduce conflicting medical expert opinions." (Rosenzweig at 652 [2d Dept 2024] [internal quotation marks and citations omitted].) However, "expert opinions that are conclusory, speculative, or unsupported by the record are insufficient to raise triable issues of fact" (Barnaman v Bishop Hucles Episcopal Nursing Home, 213 AD3d 896, 898-899 [2d Dept 2023]).
In support of their motion (Seq. No. 1), Boro Park submits an expert affirmation from Howard J. Guzik, M.D. ("Dr. Guzik"), a licensed physician board certified in internal medicine and geriatric medicine.
Dr. Guzik opines that Boro Park's employees and staff were not negligent and did not depart from good and accepted medical standards at any time while Decedent was a resident at the assisted living facility. Specifically, Dr. Guzik opines that Decedent was "an appropriate candidate for admission" to the assisted living facility on February 1, 2018 "and remained an appropriate candidate for this type of facility." The expert opines that Decedent did not require the higher level of care or supervision provided by a skilled nursing home, and it was appropriate that the facility maintained "knowledge of the general whereabouts of each resident" with room checks every two hours. The expert also opines that when Decedent's fall occurred on October 4, he was promptly taken to a hospital emergency department.
Dr. Guzik further states that Dr. Qayyum's recommendation for one-to-one care was appropriately relayed to Decedent's family by Boro Park. While it is unclear whether Dr. Qayyum's recommendation to "consider more one to one care to monitor patient" was directed at the facility or Decedent's family, the expert states that it was the family who "refused to hire a private duty aide at night despite the recommendation of the resident's physician." He opines that Boro Park had "no further obligation" to provide one-to-one care or monitoring.
The expert also states without detail that "the injuries the resident allegedly sustained as a result of [the fall] were not the result of any actions or inactions on behalf of Boro Park."
Based on evaluation of these submissions, the Court finds that the movant has failed to meet their prima facie burden of establishing that Boro Park acted within the standard of care for [*4]an assisted living facility and that Decedent did not require any additional fall precautions or interventions. The expert states in a conclusory manner that Decedent remained an appropriate candidate for assisted living throughout his admission. However, he provides little detail as to Decedent's change in circumstances during that time, as evidenced by his August 2018 fall, declining physical and cognitive state, or the physician's recommendation of one-to-one monitoring. The expert does not directly address the allegations in the bill of particulars, only states in a conclusory manner that "he was provided with the necessary level of care" and "the staffing of the memory unit at night was appropriate."
The expert's opinion placing responsibility for the lack of additional monitoring on the patient's family, who declined hiring a private aide, is conclusory and controverted by the testimony from Decedent's daughter. She testified that she was assured transferring him to the memory unit would "take care of his needs," and that she had no conversations about hiring a personal night aide. Therefore, the expert's opinion is based on issues of fact which require resolution of a jury.
Additionally, the expert's opinions on proximate causation are conclusory and unsupported by the record. As the movant has failed to establish prima facie that Boro Park was not negligent and complied with the applicable standard of care, summary judgment cannot be granted as a matter of law, regardless of the sufficiency of the opposing papers.
Notwithstanding the above, Plaintiff submits an expert affirmation from Karim J. Khimani, M.D. ("Dr. Khimani"). Contrary to the movant's affirmation in reply, the Court finds that Dr. Khimani has laid a proper foundation to opine on the issues of this case. He avers that he is a physician board certified in internal medicine and geriatric medicine, that he has an extensive history treating geriatric patients in the context of hospitals, nursing homes, and assisted living facilities, and that he is familiar with the standard of care for assisted living facility physicians and staff in New York. He has therefore established his qualifications to rebut the opinions of the movant's expert Dr. Guzik, who presented a similar background in geriatric care.
Additionally, the Court rejects movant's argument that Plaintiff's expert did not sufficiently state his opinions because he only used the language "within a reasonable degree of medical certainty" in his introductory paragraph, rather than repeating it throughout the affirmation. There is no strict requirement in the phrasing of an expert opinion, as the Court of Appeals has noted; this language "is one expression of such a standard" but not "the only way in which a level of certainty that meets the rule may be stated" (Matott v Ward, 48 NY2d 455, 460 [1979]). Plaintiff's expert clearly stated the "reasonable degree of medical certainty" standard in his introductory paragraph, then further elaborated on his opinions in more detail.
Plaintiff's expert Dr. Khimani opines that Boro Park departed from the standard of care by failing to provide adequate fall prevention interventions, monitoring and supervision. The expert opines that Decedent should have been assessed as high risk for falls in light of his "history of prior falls, unsteady gait, insomnia, and wandering throughout the facility at night." For this reason, the expert counters the opinion of Dr. Gulik that Decedent was a "suitable candidate for an assisted living facility rather than a skilled nursing facility," and he opines that Decedent required a higher level of care than room checks every two hours.
Plaintiff's expert opines that Decedent's prescription of melatonin in September 2018 placed him at greater risk of falling, and the facility should have implemented "more frequent monitoring and closer supervision . . . during evening hours." He opines that when Dr. Qayyum [*5]recommended one-on-one supervision on September 11, 2018, the family's alleged inability to pay for a private aide did not "relieve" Boro Park of any duty to provide additional monitoring. Rather, he opines Boro Park should have reassessed his fall risk and provided "closer monitoring and visual checks more frequent than every two hours," such as every 15-30 minutes, in light of Dr. Qayyum's recommendation. He also opines that Decedent should have been placed in a room with better visibility from the staff and precautions such as "bed or chair alarms" should have been provided. He opines that if the appropriate supervision and safety measures could not be provided at Boro Park, they should have recommended transfer to a skilled nursing facility.
The expert opines that following his August 2018 fall, Boro Park "failed to conduct a proper post-fall assessment . . . and did not document any specifics related to the fall," such as the time and location, which was a departure from the standard of care. The expert also notes that there is no record of Decedent receiving physical therapy for strength and gait improvement following the August fall, despite the recommendation from Dr. Qayyum.
Finally, Plaintiff's expert opines that Boro Park did not properly document the circumstances around October 3, 2018 fall, including whether he was conscious, feeling pain, and what "immediate medical attention was provided by the facility staff" such as moving him or applying pressure to the injury.
Plaintiff's expert opines that these alleged departures in supervising and monitoring Decedent proximately caused his injuries from an "unwitnessed, preventable fall."
Even if Boro Park had established prima facie entitlement to summary judgment, Plaintiff's expert opinions sufficiently raise issues of fact as to whether Boro Park departed from the standard of care in assessing Decedent's fall risk and implementing heightened supervision, monitoring, and other preventive measures. Plaintiff's expert also raises issues of fact on the issue of whether the lack of these precautions was a proximate cause of his injuries from the October 3, 2018 fall. Accordingly, Boro Park's motion for summary judgment is denied.
Turning to the motion of Dr. Qayyum (Seq. No. 2), the movant submits an expert affirmation from Lawrence Diamond, M.D. ("Dr. Diamond"), a licensed physician board certified in family practice and geriatric medicine.
Dr. Diamond opines that Dr. Qayyum acted within the standard of care at all times in treating Decedent, and that his alleged departures did not proximately cause his injuries. The movant contends that Dr. Qayyum was not an employee of Boro Park, and he was not the patient's primary or "attending" physician. The expert states that Decedent's "primary medical doctor" was Dr. Eileen Rassi, a private internist who treated Decedent "from at least 2002 through 2018." The records show that Dr. Rassi completed a medical evaluation and rehab recommendation in April 2018. The expert also notes that Decedent was evaluated by a private neurologist on February 8, 2018 and September 10, 2018, and Dr. Rassi was listed as his referring primary care physician.
The expert opines that Dr. Qayyum was a non-employee physician whose role was to "make recommendations regarding medical conditions that required further evaluation," but he did not have the authority to order or implement changes to Decedent's plan of care as to fall prevention interventions. The expert also states that Dr. Qayyum was not involved "in the internal decisions at Boro Park" regarding whether a resident should be transferred to a skilled nursing facility.
Thus, the expert's opinion focuses on Dr. Qayyum's limited duty as consulting physician for the facility. The expert opines that within this limited role, Dr. Qayyum appropriately [*6]assessed Decedent's fall risk and made proper recommendations, including physical therapy, assistive devices, and one-on-one monitoring.
Specifically, Dr. Diamond opines that on Dr. Qayyum's first examination on February 27, 2018, he appropriately recommended physical therapy and occupational therapy to improve his activities and daily living. The expert also opines that Dr. Qayyum provided a thorough evaluation and recommendations in his June 12, 2018 and July 17, 2018 appointments, including continued physical therapy and a recommendation to "monitor for falls" due to Decedent's physical decline and use of a walker.
The expert opines that after Decedent's initial fall in August 2018, Dr. Qayyum properly performed a physical examination and recommended physical therapy evaluation. The expert also opines that on September 11, 2018, when Decedent was prescribed melatonin for insomnia, Dr. Qayyum appropriately addressed his risk of "night-time falls" and recommended "more one to one care to monitor the patient."
The expert opines that because Dr. Qayyum had no control over the decisions made by Boro Park or the patient's family regarding heightened supervision, no departures from the standard of care on his behalf were a proximate cause of Decedent's fall.
The Court finds based on the movant's submissions that Dr. Qayyum has established prima facie entitlement to summary judgment. Firstly, the movant has established that Dr. Qayyum's role at Boro Park was limited to examining Decedent on an "as needed" basis at the request of nurses and staff, and he made recommendations for further evaluation and treatment. However, with respect to fall prevention and monitoring, he testified that he "would not be in charge of whether they followed through on that," and his job was simply to assess whether the patient was at risk.
There is no other evidence obtained from discovery, including the depositions of Boro Park Director of Operations Isaac Friedman, administrator Edline Joseph, or case manager Crystal Lorainey, demonstrating that Dr. Qayyum had further duties or responsibilities. He is referred to as a non-employee "house doctor" who would be notified when a resident sustained a fall or to assess their medical condition. When asked if Dr. Qayyum had access to the resident's chart, Friedman testified equivocally that Dr. Qayyum "could ask the administrator to see the chart."
Administrator Edline Joseph testified the physician's recommendations would either "go to the case manager" or the physician would consult directly with the family. In this case it is undisputed that Dr. Qayyum did not speak with Decedent's family, and the Boro Park progress notes regarding a night aide read "CM [case manager] will follow up." There is no testimony that Dr. Qayyum had a role in directing or ensuring the recommended interventions were undertaken.
Additionally, Decedent's initial Assisted Living Residence Medical Evaluation was signed by non-party Claude-Henri Jean, M.D. on January 29, 2018 prior to his admission. There is no evidence that Dr. Qayyum assessed or made recommendations regarding his "suitability" for assisted living or whether he required transfer to a skilled nursing facility.
"Although physicians owe a general duty of care to their patients, that duty may be limited to those medical functions undertaken by the physician and relied on by the patient. The existence and scope of a physician's duty of care is a question of law to be determined by the court." (Abruzzi v Maller, 221 AD3d 753, 755 [2d Dept 2023] [internal quotation marks and citations omitted].) Based on the testimony, medical records, and expert submissions, the movant [*7]has established that Dr. Qayyum's duty of care toward the patient was limited and did not include independently following up on whether specific fall prevention recommendations were implemented. Further, the movant established that his scope of duty did not include recommending or ordering Decedent's transfer to a skilled nursing facility.
Within that limited duty of care, the movant offered an expert opinion setting forth that Dr. Qayyum's assessment and recommendations for Decedent were in accordance with the standard of care. Specifically, the expert opined that Dr. Qayyum properly noted the patient's fall risk and recommended physical therapy and increased night-time monitoring or one-to-one supervision.
Further, the movants have established that no acts or omissions on Dr. Qayyum's part were a proximate cause of Decedent's fall and injuries. As the expert opines, Dr. Qayyum's "proper recommendation" of increased monitoring and one-to-one supervision "was a safeguard against preventing exactly this outcome," and the fall occurred because his advice was not implemented by Decedent's family and/or Boro Park. The burden therefore shifts to Plaintiff to raise an issue of fact.
In opposition, Plaintiff submits a separate expert affirmation from Dr. Khimani, opining on the alleged departures of Dr. Qayyum.
Dr. Khimani opines that Dr. Qayyum "failed to recommend and ensure implementation of appropriate fall prevention interventions" despite Decedent's high risk of falls.
Specifically, the expert states that when melatonin was prescribed on September 11, this "should have prompted Dr. Qayyum to recommend the initiation of more frequent monitoring and closer supervision of the resident during evening hours to ensure his safety and minimize the risk of falling," and then "should have followed up with the facility in a timely manner" on whether his recommendations were implemented or changed his recommendations accordingly.
The expert also opines that Dr. Qayyum departed from the standard of care by failing to "recommend transfer" of Decedent to a skilled nursing facility as early as February 27, 2018, due to his "unsteady gait and requirement for close supervision and monitoring."
The expert states throughout his affirmation that Dr. Qayyum was "the resident's primary physician," and on that basis, he opines that Dr. Qayyum had a duty to "ensure that his recommendation for physical therapy was implemented" and "timely and properly follow up regarding his treatment recommendation for one-to-one supervision."
The expert opines that if Dr. Qayyum had followed up with the facility and learned that the family was unable to afford a private aide, "he would have had the opportunity to recommend alternative measures of closer supervision and monitoring that the facility could have provided at no additional cost to the family." The expert states that Dr. Qayyum "should have followed up with the facility in a timely manner and would have learned that Boro Park was unable to implement his treatment recommendation . . . which would have prompted Dr. Qayyum to either recommend more frequent monitoring and supervision such as visual checks every 15 or 30 minutes or recommend transfer of his patient to a skilled nursing facility." The expert opines that this failure to follow up and recommend alternative options resulted in Decedent's fall.
The Court finds based on these submissions that Plaintiff has failed to raise a genuine, triable issue of fact as to Dr. Qayyum's liability.
The record establishes that Dr. Qayyum was not a Boro Park employee, he was not responsible for instituting or supervising the facility's plan of care with respect to fall prevention, [*8]and he did not have the authority to make decisions such as transferring Decedent to a skilled nursing facility. He was called to examine Decedent on an "as needed" basis a handful of times during his admission, including on August 21, 2018 after his initial fall, and on September 11, 2018 following a hospital admission for high blood pressure. Contrary to the statements of Plaintiff's expert, there is no evidence he routinely followed up with Decedent, acted as his "primary physician," or accessed and reviewed his Boro Park chart. Plaintiff's expert premises his opinions on an alleged duty to manage Decedent's overall care and ensure fall prevention measures, which is not supported by the record.
For example, the expert opines that Dr. Qayyum should have "followed up with the facility in a timely manner" and "ensured" his recommendations were followed, and that he should have provided alternatives in the event those recommendations were not implemented. As discussed above, the movants established as a matter of law that Dr. Qayyum had no duty to "ensure" Boro Park implemented a fall prevention plan or heightened supervision, as his role was limited to assessing his risk of falls and making recommendations.
Similarly, the expert opines Dr. Qayyum failed to properly determine the "suitability" of Decedent to reside at Boro Park and transfer him to another facility. However, Plaintiff provides no evidence that any decisions regarding whether Decedent required a higher level of supervision than the Boro Park facility could provide were within the scope of Dr. Qayyum's authority or duty. Plaintiff's expert states that Dr. Qayyum was negligent in his "initial assessment on February 27, 2018 as to whether Mr. Robinson was a suitable candidate for an assisted living facility" rather than a skilled nursing facility, but there is no evidence in the record that Dr. Qayyum ever made such an assessment. Another non-party physician, Dr. Claude-Henri Jean, completed Decedent's pre-admission medical evaluation on January 29, 2018. The fact Decedent was approved for assisted living at Boro Park by another physician is never addressed by Plaintiff's expert. The expert asserts Dr. Qayyum had a duty as Decedent's "primary physician" to recommend transfer, which is contradicted by evidence in the record. Thus, the expert fails to raise a genuine issue of fact that Dr. Qayyum had a duty to evaluate Decedent's suitability for assisted living or to transfer him to a skilled nursing facility.
In addition, Plaintiff's expert is contradicted by the record on the recommendations made by Dr. Qayyum. Plaintiff's expert opines that Decedent should have received physical therapy to improve his strength and gait. Dr. Qayyum did recommend physical therapy on June 12, and on Decedent's next visit on July 17, Dr. Qayyum noted that he was receiving physical therapy twice a week. On August 21, his assessment and plan included "consider PT evaluation again," and on September 11 he noted "see if patient has run out of PT sessions." The expert also opines that Dr. Qayyum should have recommended "more frequent monitoring and closer supervision of the resident during evening hours" on September 11. This was the exact recommendation made by Dr. Qayyum on that date, which included a note to "monitor for night-time falls" and "consider more one to one care to monitor patient." Plaintiff's expert does not articulate any further recommendations required by the standard of care. The expert's statements that Dr. Qayyum did not make proper recommendations are therefore conclusory and unsupported by the record.
In sum, as discussed above, the Court finds that Dr. Qayyum's duty with respect to fall prevention was limited to assessing Decedent's risk and making recommendations to the facility, not directing or "ensuring" how such recommendations were implemented. Plaintiff's expert fails to raise a triable issue of fact that his assessment or recommendations departed from the standard of care.
Further, Plaintiff's expert opinions on proximate causation rely on a series of assumptions that Dr. Qayyum had a duty to review Decedent's chart and intervene or offer alternate options in light of the family's inability to pay for a private aide. These opinions are wholly conclusory and speculative, and therefore insufficient to raise a triable issue of fact (see Wagner v Parker, 172 AD3d 954, 966 [2d Dept 2019]).
For these reasons, Dr. Qayyum's motion for summary judgment is granted in its entirety, and Plaintiff's Complaint against him is dismissed.
Accordingly, it is hereby:
ORDERED that Defendant Boro Park's motion (Seq. No. 1) for summary judgment is granted to the extent of dismissing Plaintiff's causes of action for negligence per se and breach of contract, and the motion is otherwise denied; and it is further
ORDERED that Dr. Qayyum's motion (Seq. No. 2) for summary judgment is granted; and it is further
ORDERED that the caption is amended to read:
SUPREME COURT OF THE STATE OF NEW YORK COUNTY OF KINGS
NICOLE A. SPEARS, as the Executor of the Estate of JAMES ROBINSON,
Plaintiff, 
against
BORO PARK SENIOR LIVING COMMUNITY, LLC,
Defendant.
The Clerk shall enter judgment in favor of BASIT QAYYUM, M.D.
This constitutes the decision and order of this Court.
ENTER.
Consuelo Mallafre Melendez
J.S.C.